IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2025

## STATE OF TENNESSEE v. FORREST SCOTT EVANS

**Appeal from the Criminal Court for Sullivan County**
**No. S63883   James F. Goodwin, Jr., Judge**

_____

### No. E2024-00392-CCA-R3-CD

_____

The Defendant, Forrest Scott Evans, pled guilty to the offense of aggravated assault, and the trial court sentenced him to a term of seven years and six months. The court suspended the sentence and placed the Defendant on probation. Thereafter, the Defendant committed new crimes in Virginia. When the Defendant was returned to Tennessee, the trial court revoked the suspended sentence and ordered him to serve it in full. The Defendant appeals, arguing that a full revocation was an abuse of discretion. Upon our review, we respectfully disagree and affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender - Appellate Director, Tennessee District Public Defenders Conference; Andrew J. Gibbons, District Public Defender; and Melissa G. Owens, Assistant District Public Defender, for the appellant, Forrest Scott Evans.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Matthew W. Darby, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On December 11, 2014, the Defendant pled guilty to the offense of aggravated assault. The trial court sentenced the Defendant to an effective term of seven years and six months. It suspended this sentence and placed the Defendant on probation.

About six months into his probationary term, the Defendant violated his probation conditions by absconding from supervision for some eight months. As a consequence of the violation, the trial court revoked his probation and imposed a split confinement sanction of one year.

Six months after the Defendant's release, the trial court issued a second violation warrant in November 2017. The warrant alleged that the Defendant had been arrested the previous month in Virginia on multiple felony charges related to larceny and burglary. The Defendant was later convicted in Virginia and sentenced to eight years in the Virginia Department of Corrections. Upon being released in August 2023, he was returned to Tennessee for a probation violation hearing.

### A.   PROBATION REVOCATION HEARING

The trial court held the revocation hearing on February 21, 2024. At the hearing, the Defendant admitted to the allegations in the 2017 probation violation warrant, and the hearing focused on determining the appropriate consequences for his violations.

The Defendant admitted that he had been under the influence of drugs at the time of his offenses in Virginia but maintained that he took full responsibility for his actions. While incarcerated in Virginia, the Defendant participated in various rehabilitative programs, including life skills classes, which he characterized as evidence of his commitment to self-improvement.

In preparation for his probation violation hearing, the Defendant applied to the Tennessee Recovery Oriented Compliance Strategy (TN-ROCS) program. A program administrator assessed his situation and recommended him for long-term residential treatment at Synergy Treatment Centers in Memphis, which would require a six-to-twelve-month inpatient commitment. The Defendant expressed a willingness to comply with this

recommendation and any additional supervision conditions the trial court might impose. During cross-examination, the Defendant acknowledged his criminal history, which included prior convictions for burglary, theft, and obstruction of justice.

### B.   THE TRIAL COURT'S ANNOUNCEMENT

Upon conclusion of the proof, the trial court delivered a detailed oral ruling. The court highlighted the Defendant's criminal conduct and his history on probation, including violations for absconding, failing to report new charges, and committing multiple felonies while on probation. The court also emphasized that measures less restrictive than confinement had been tried unsuccessfully, including the initial suspension of his sentence, the imposition of split confinement, and his reinstatement to probation.

The court acknowledged the efforts the Defendant had made during his incarceration in Virginia, including completing rehabilitative programs. However, it also noted the Defendant's admission that he had been drug-free for six years, a fact that diminished the urgency of immediate drug treatment. Accordingly, the trial court revoked the Defendant's probation and ordered him to serve the balance of his original sentence in confinement.

The trial court entered its written order on February 27, 2024. The Defendant filed a timely notice of appeal seventeen days later.

### STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that 'the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'' *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion with a presumption of reasonableness.

## ANALYSIS

In this appeal, the Defendant argues that the trial court abused its discretion in ordering that he serve his sentence as a consequence of the probation violation. More specifically, he asserts that the trial court failed to give sufficient reasons for the revocation and did not consider alternatives to incarceration. The State responds that the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We agree with the State.

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2018).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

### A.   THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Where a defendant admits that he or she violated a condition of probation, the trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn.

Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

"[C]ompliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). As this court has recognized in the context of felony probation, "The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)). In felony probation cases, a trial court's authority to revoke probation fully for criminal conduct is generally limited to non-technical violations, or those consisting of new felonies or Class A misdemeanor offenses. *Id.*; Tenn. Code Ann. § 40-35-311(g) (Supp. 2022).

In this case, the Defendant was on probation for a felony conviction, and he admitted to committing new felony offenses while in Virginia. On appeal, the Defendant does not challenge that he violated the conditions of his probation through this new criminal conduct. As such, we conclude that the record supports a finding that the Defendant committed a non-technical violation of probation. *See, e.g.*, *State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *3 (Tenn. Crim. App. July 26, 2024) (finding substantial evidence of a violation where probationer admitted the new criminal conduct), *no perm. app. filed*.

## B.     THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024) (citation and internal quotation marks omitted). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C) (2019); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also

consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1).

The trial court here offered three principal reasons to support its decision to revoke fully the Defendant's suspended sentence. First, the court considered the serious nature of the violations consisting of new felony offenses while on probation for a felony. This was a proper consideration. *See Dagnan*, 641 S.W.3d at 759 n.5.

The Public Safety Act of 2016 specifically permits trial courts to consider whether a violating probationer can "remain compliant and crime-free in the community" in determining the appropriate consequence. Tenn. Code Ann. § 40-28-302(2). From this premise, we have also recognized that "[t]he rehabilitative goals of probation are directed precisely toward the goal of lawful conduct and public safety. Thus, this court has long recognized that where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served." *State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.

In this case, the new criminal conduct is particularly serious in two ways. First, it consisted of new felony crimes, and "[t]he seriousness of the violation only increases when the probationer continues to commit new felony offenses while on probation for a felony." *Id.* Second, the Defendant has a significant history of burglary and theft offenses. Seeing these types of crimes repeated in the instant violation "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct." *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *4 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*. As such, the trial court properly considered the nature and seriousness of the Defendant's new criminal conduct as part of the consequence determination.

Pushing against this factor, the Defendant argues that the trial court should not have considered his prior criminal behavior. We respectfully disagree. It is true that a trial court may not consider a probationer's prior known criminal conduct in determining whether he or she violated the conditions of probation. *See State v. Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *4 (Tenn. Crim. App. Oct. 23, 2008), *no perm. app. filed*. However, the probationer's criminal record is certainly relevant to the consequence determination. *See Dagnan*, 641 S.W.3d at 759 n.5. Indeed, this factor may help show "whether the beneficial aspects of probation [are] being served and whether the defendant is amenable to continued probation." *State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018) (citation and internal quotation marks omitted), *no perm. app. filed*. Thus, the trial court's consideration of the Defendant's

prior burglary and theft offenses—and their similarity to the offenses committed in the instant violation—was both permissible and appropriate. This issue is without merit.

The trial court next considered the Defendant's history of violations on probation, including the Defendant's previous absconsion from supervision. This was a proper consideration. *See Dagnan*, 641 S.W.3d at 759 n.5. The instant violation was the Defendant's second violation, and he admitted at the hearing that he had previously absconded from supervision and engaged in illegal substance use. This court has recognized that "prior violations may show that the defendant has poor potential for rehabilitation and is unwilling to engage in rehabilitative efforts." *Thompson*, 2024 WL 3549189, at *4 (quoting *Everett*, 2022 WL 16643628, at *4). As such, the trial court appropriately considered this factor as part of the consequence determination.

Finally, the trial court considered the Defendant's history of sanctions while on probation. This consideration is specifically authorized by the Public Safety Act, which provides that "a court may consider an individual's supervision and sanctions history when adjudicating subsequent violations." Tenn. Code Ann. § 40-28-305(e). This factor can be important to the consequence analysis. The failure of lesser sanctions to correct behavior may show that the defendant is unwilling to engage in rehabilitative efforts and demonstrate that he or she is no longer suitable for probation. *Cf.* Tenn. Code Ann. § 40-35-103(1)(C). In this case, we agree that the use of lesser sanctions, including incarceration, did not successfully reinforce for this Defendant the importance of complying with the law or his probation conditions. *See Walden*, 2022 WL 17730431, at *4 (recognizing that "measures less restrictive than confinement were unsuccessful for Defendant and reflect poorly on Defendant's potential for rehabilitation."). The trial court appropriately considered these factors as part of the consequence determination.

In arguing that the trial court abused its discretion by ordering his sentence into execution, the Defendant asserts that the trial court failed to consider the effect of his prior rehabilitative efforts and his amenability to continued rehabilitation. In particular, he points to his successful completion of several programs while incarcerated in Virginia and his recommendation for long-term residential treatment as an alternative to incarceration. We agree with the Defendant that these factors are relevant to the consequence determination, which, in part, examines whether a probationer is amenable to continued rehabilitation. *See Rand*, 696 S.W.3d at 106.

From our review of the record, the trial court considered and balanced the factors identified by the Defendant. It observed that the Defendant had been punished for his Virginia conduct and that he had acknowledged his illegal substance use issue. The court

7

likewise noted that the Defendant took "advantage of the classes that he could take" while incarcerated in Virginia, giving him "credit" for doing so. However, the court balanced these considerations against the serious nature of the violation, the Defendant's history, and the failure of lesser sanctions to ensure compliance. And it questioned the Defendant's request for immediate substance use treatment in light of his admission that he had not used drugs in the past six years.

Because the trial court considered and balanced a number of relevant factors and placed its reasoning on the record, its judgment is entitled to a presumption of reasonableness. The Defendant's disagreement with that balancing does not show an abuse of discretion. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the record supports the trial court's finding that the Defendant committed a non-technical violation of his probation. We also hold that the trial court acted within its discretion in fully revoking the Defendant's suspended sentence as a consequence of that violation. Accordingly, we respectfully affirm the judgment of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE

8